THE STATE, EX REL. TULLEY ET AL., *v.* BROWN, SECRETARY OF STATE, ET AL.

(No. 72-623—Decided September 7, 1972.)

*Cameron & Cameron Co., L. P. A., Mr. Bruce L. Cameron, Messrs. Graham & Dutro, Mr. James L. Graham* and *Mr. Joseph R. Jordan,* for relators.

*Mr. William J. Brown,* attorney general, and *Mr. Thomas V. Martin,* for respondent Ted W. Brown, Secretary of State.

*Mr. George C. Smith,* prosecuting attorney, and *Mr. William B. Shimp,* for respondent board of elections.

*Per Curiam.* First, with respect to the duty of the Secretary of State to transmit to the boards of elections all part-petitions, we note that Section 1(g) of Article II of the Ohio Constitution requires an affidavit by the solicitor of signatures to each part-petition, and it is explicitly required that such affidavit contain a recital by the affiant of the fulfillment of certain duties required of him. The Secretary of State, in his answer, states that his reason for not forwarding certain part-petitions was that they were not verified in accordance with the constitutional requirements. *State, ex rel. Herbert,* v. *Mitchell* (1939), 136 Ohio St. 1, expressly acknowledged the authority of the Secretary of

State to reject petitions which were not verified as provided by the Constitution. There being no duty on the part of the Secretary of State to transmit part-petitions improperly verified, his answer is treated as a motion to dismiss, and is hereby sustained.

As to prohibiting the various boards of elections from proceeding to determine the validity of petitions, we sustain respondent's motion to dismiss. In *State, ex rel. Methodist Book Concern,* v. *Guckenberger* (1937), 133 Ohio St. 27, we held that prohibition will not lie where an officer or board is performing only ministerial functions or duties. Here, the boards are proceeding to perform their statutory duties as required by R. C. 3519.15. Further, R. C. 3519.16 provides for judicial recourse after protest of the board's actions.

*Judgment accordingly.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, LEACH and BROWN, JJ., concur.

SCHNEIDER, J., dissenting. I would allow a writ of mandamus against the Secretary of State to require him to amend his instructions to the various county boards of elections in two particulars.

First, I would require him to ignore the requirement of R. C. 3519.05 that the petition and each part-petition contain a completed statement as to the consideration received, or to be received, by the circulator. This requirement, it seems to me, clearly contravenes Section 1(g), Article II of the Ohio Constitution, which provides that the General Assembly may pass laws "to facilitate . . . but in no way *limiting or restricting*" the provisions of the Constitution as to the right of initiative. (Emphasis supplied.) See my dissent in *State, ex rel. Tulley,* v. *Brown* (1972), 29 Ohio St. 2d 235, at pages 238 and 239.

No constitutional or statutory limit exists upon the amount of money which can be paid for the circulation of

any election petition, either for a candidate or an issue. Yet the General Assembly has chosen to single out a state-wide initiative or referendum petition for burdensome treatment by requiring the fact of payment or nonpayment, as the case may be, to be noted on the face of each part-petition. R. C. 3519.05 represents a clear attempt to impede and hinder the constitutionally granted right of initiative. The statute is, therefore, equally offensive to Section 2, Article I of the Ohio Constitution which attempts to secure equal protection.

Secondly, the foregoing applies with even greater force to the requirements of R. C. 3519.08 that state-wide initiative or referendum petition circulators be, in effect, licensed by the Secretary of State and that no other person may circulate such a petition. I would order the Secretary to ignore that statute also. Its provisions do not apply to elections for offices or on local issues. Nor do any other statutes apply similar provisions to any other election.

No legitimate public interest is served in requiring petitions in this one instance to be so rigidly controlled. The only interest which is served is that of the General Assembly itself in protecting the laws enacted by it from possibly being superseded by a constitutional amendment adopted by means of the initiative.

It may be argued that, even if the Secretary's instructions were to be corrected as indicated, the pleadings do not disclose whether the instant initiative will reach the ballot or will fail because a sufficient number of signatures do not meet other criteria which are unchallenged. In the latter case, the issues raised might be said to be not justiciable.

However, the paramount issue is not the success or failure of a single initiative effort. At stake in this case, as I see it, is the integrity of the initiative process so long as it remains in its present form in our Constitution,